**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

**LILLIAN LIMA,**

       **Plaintiff,**

**v.**                                **Case No: 8:13-cv-1809-T-35TBM**

**FLORIDA DEPARTMENT OF**
**CHILDREN AND FAMILIES and**
**DAVID WILKINS, individually and in**
**his official capacity as Secretary of the**
**Florida Department of Children and**
**Families,**

       **Defendants.**

_____/

## ORDER

**THIS MATTER** comes before the Court for consideration of the Motion for Summary Judgment (Dkt. 76), filed by Defendants, Florida Department of Children and Families ("DCF") and David Wilkins, in his official capacity as Secretary of DCF[1] (the "Secretary"); Plaintiff's Response in opposition thereto (Dkt. 82); and Defendants' Reply to Plaintiff's Response. (Dkt. 86) Upon consideration of all relevant filings, case law, and being otherwise fully advised, the Court hereby **GRANTS in part**, and **DENIES in part**, Defendants' Motion for Summary Judgment. (Dkt. 76)

---

[1] Since the filing of this case, Defendant David Wilkins resigned from his previous position as Secretary of DCF. (Dkt. 15 at P. 3, n. 2) By operation of Fed. R. Civ. P. 25(d), to the extent that Plaintiff sued Wilkins in his official capacity, Wilkins' successor was automatically substituted as a party when Wilkins resigned.

1

## I. BACKGROUND

This is a claim arising out of Plaintiff, Lillian Lima's employment with DCF. Plaintiff initiated this action in the Circuit Court for the Thirteenth Judicial Circuit in and for Hillsborough County, Florida. (Dkt. 2) Defendants removed the action to this Court on July 12, 2013. (Dkt. 1)

Defendants moved to dismiss Plaintiff's initial Complaint on August 2, 2013. (Dkt. 15) Thereafter, on August 22, 2013 and pursuant to Rule 15(a)(1), Plaintiff filed her Amended Complaint. (Dkt. 18) On October 11, 2013, Plaintiff, with the consent of Defendants, filed her Second Amended Complaint pursuant to Rule 15(a)(2). (Dkt. 30) The Second Amended Complaint contains five counts, as follows:

1. Count I: Equal Pay Act, 29 U.S.C. § 206(d)(1)
   *(DCF/Secretary Wilkins, individual capacity)*

2. Count II: Equal Pay Act Retaliation, 29 U.S.C. § 215(a)(3)
   *(DCF/Secretary Wilkins, individual capacity)*

3. Count III: "Florida Personnel Management Law," § 110.105(2)(a), Fla. Stat.
   *(DCF/Secretary Wilkins, individual capacity)*

4. Count IV: Florida Constitution, Article I, Section 2 (Equal Protection)
   *(DCF/Secretary Wilkins, individual capacity)*

5. Count V: 42 U.S.C. § 1983 – 1st & 14th  Amendments to U.S. Constitution
   *(Secretary Wilkins, official capacity/Secretary Wilkins, individual capacity)*

(Dkt. 31 at P. 2, 6-12) On October 15, 2013, the Court dismissed Count III of Plaintiff's Second Amended Complaint with prejudice. (Dkt. 32) Defendant David Wilkins filed a separate Motion for Summary Judgment, in his individual capacity. (Dkt. 49) The Court entered an Order granting summary judgment as to Counts I & V in favor of Defendant Wilkins, in his individual capacity. (Dkt. 94) Defendants DCF and the Secretary, in his

official capacity, now move for summary judgment as to the remaining four Counts of Plaintiff's Second Amended Complaint.  (Dkt. 76)

### a.  Undisputed Facts

Plaintiff began her employment with DCF in July 2007 in a position with the class title of "Operations Review Specialist," and the working title of "Project Coordinator," at a pay rate of $59,999 a year.  (Dkt. 81 at ¶ 1; Dkt. 59-3 at P. 12)

In January 2011, Defendant David Wilkins was appointed to serve as Secretary of DCF.  (Dkt. 81 at ¶ 2)  At the time of his appointment, the Secretary had never met Plaintiff in person.  (Dkt. 81 at ¶ 4)  At the Secretary's first in-person meeting with Plaintiff, he told her "I didn't even know I had you."  (Dkt. 69 at P. 4)  At all times material to this action, Plaintiff was and continues to be registered to vote as an Independent.  (Dkt. 57-4 at P. 99; Dkt. 57-5 at P. 194-95)  Plaintiff never discussed her political affiliation with either the Secretary or DCF's Chief of Staff, Vivian Myrtetus ("Myrtetus").  (Dkt. 57-5 at P. 198-99) In March of 2011, the Secretary hired a Republican, John Davis ("Davis"), to head a new division of DCF, the Office of External Affairs, at a salary of $84,999 a year.  (Dkt. 81 at ¶ 3; Dkt. 59-3 at P. 11)  Davis's class title at that time was "Operations and Management Consultant Manager" ("OMCM"), and his working title was "Director of External Affairs." (Dkt. 59-3 at P. 11; Dkt. 57-7 at P. 61)  Davis did not supervise any DCF employees at that time.  (Dkt. 57-7 at P. 61)

Also in March of 2011, Plaintiff's position, along with others, was slated for elimination due to budget cuts.  (Dkt. 76 at P. 5)  After discussions among Plaintiff's supervisor at the time, Jamie Self ("Self"), Davis, Myrtetus, and members of DCF's HR staff, it was determined that Plaintiff and one other employee would be moved into

positions in the newly-created Office of External Affairs.  (Dkt. 76 at P. 5-6)   On April 19, 2011, Plaintiff met with Davis and the Secretary in Orlando.  (Dkt. 57-6 at P. 64)   The purpose of this meeting was for Defendant to meet Plaintiff in person, to allow Defendant to discuss his vision and goals for DCF and its programs with Plaintiff, and to allow Plaintiff to discuss her previous work on an initiative called "Breaking the Cycle" and the importance of that program.  (Id. at P. 64-65, 68-70)   The Secretary thought that based on Plaintiff's interests and that initiative, Plaintiff would be a good fit in the Office of External Affairs.  (Dkt. 75-1 at P. 56-57)

Following this meeting, Plaintiff created a proposed organizational chart for the Office of External Affairs, placing herself in a new position under Davis.  (Dkt. 50-17)   Initially, the specifics of Plaintiff's transfer were left to Self, Plaintiff's supervisor at the time.  (Dkt. 57-6 at P. 38-39)   Plaintiff and Self met following her meeting with Davis and the Secretary, at which time Plaintiff discussed the possibility of a salary increase with him. (Dkt. 81 at 12; Dkt. 76 at P. 10)   Self told Plaintiff that she would have to request a salary increase from Davis and that her move was still conditioned on finding room in the budget.  (Dkt. 76 at P. 10)   On April 26, 2011, Plaintiff told Davis that she looked forward to working under his "Director of External Affairs" leadership.  (Dkt. 50-14)   At the same time, Plaintiff requested, through Davis, a 25% pay increase to align with her increased duties.  (Id.)   On June 24, 2011, Davis's position was "reclassified" from Operations and Management Consultant Manager to "Senior Management Analyst Supervisor," ("SMA Supervisor") so that he could supervise a staff.  (Dkt. 59-3 at P. 11; Dkt. 57-6 at P. 43-44; Dkt. 57-7 at P. 63-74)   His working title of "Director of External Affairs" did not change. (Dkt. 57-6 at P. 42)

On July 1, 2011, Plaintiff was officially offered a new position in the Office of External Affairs which carried no increase in pay. (Dkt. 81 at ¶ 13, 16) On this date, Plaintiff emailed the Secretary asking to discuss the denial of her request for a pay increase. (Dkt. 59-3 at P. 39) At some point thereafter, Plaintiff had a conversation with the Secretary during which she requested a pay increase to be in line with the pay of "other directors." (Dkt. 57-5 at P. 213) The Secretary informed her that he did not generally approve raises an assessment of performance and advised her that she would have to prove her worth. (Dkt. 57-5 at P. 174-75) Following this conversation, Plaintiff emailed Davis and told him that the matter had been "resolved" following her discussion with the Secretary. (Dkt. 77-18 at P. 1)

On July 11, 2011, Plaintiff accepted her new position, which had the class title of OMCM and was a Select Exempt Service position serving at the pleasure of the agency head. (Dkt. 81 at ¶ 14; Dkt. 57-7 at P. 27; Dkt. 50-2) Plaintiff believed that her new position would carry the working title of "Director of Minority Affairs and Community Engagement." (Dkt. 81 at ¶ 15) On July 19, 2011, Plaintiff emailed all of the regional directors of DCF about the "Breaking the Cycle" Initiative and signed the email identifying herself as "Director of Minority Affairs and Community Engagement." (Dkt. 59-3 at P. 15) Also on July 19, 2011, Plaintiff was issued a job description and title of "Manager of Minority Relations and Community Engagement" by Myrtetus. (Dkt. 50-20 at P. 3-4) Defendant took issue with the change and viewed it as an unwarranted demotion. (Dkt. 50-20 at P. 2) Plaintiff emailed the Secretary regarding her concerns about her position, title, and duties on July 29, 2011. (Dkt. 50-19) The Secretary told her to work it out with Davis and Myrtetus. (Id.) After refusing to accept the title of "Manager," Plaintiff was

terminated through a letter from Myrtetus, on August 5, 2011.  (Dkt. 81 at ¶ 17; Dkt. 59-3 at P. 46-48)  The letter stated that her termination was without recourse because she was "subject to dismissal at the discretion of the agency head."  (Dkt. 59-2 at P. 40)

## II. LEGAL STANDARD

Summary judgment is appropriate when the movant can show that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law.  Fennell v. Gilstrap, 559 F.3d 1212, 1216 (11th Cir. 2009) (citing Welding Servs., Inc. v. Forman, 509 F.3d 1351, 1356 (11th Cir. 2007)).  Which facts are material depends on the substantive law applicable to the case.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  The moving party bears the burden of showing that no genuine issue of material fact exists.  Clark v. Coats & Clark, Inc., 929 F.2d 604, 608 (11th Cir. 1991). Evidence is reviewed in the light most favorable to the non-moving party.  Fennell, 559 F.3d at 1216 (citing Welding Servs., Inc., 509 F.3d at 1356).  A moving party discharges its burden on a motion for summary judgment by showing or pointing out to the Court that there is an absence of evidence to support the non-moving party's case.  Denney v. City of Albany, 247 F.3d 1172, 1181 (11th Cir. 2001).  When a moving party has discharged its burden, the non-moving party must then go beyond the pleadings, and by its own affidavits, or by depositions, answers to interrogatories, and admissions on file, designate specific facts showing there is a genuine issue for trial.  Porter v. Ray, 461 F.3d 1315, 1321 (11th Cir. 2006).  The party opposing a motion for summary judgment must rely on more than conclusory statements or allegations unsupported by facts.  Evers v. Gen. Motors Corp., 770 F.2d 984, 986 (11th Cir. 1985) ("conclusory allegations without specific supporting facts have no probative value").

## III. DISCUSSION

### A. <u>COUNT I: Equal Pay Act (29 U.S.C. § 206(d)(1))</u>

In Count I of her Second Amended Complaint, Plaintiff claims that DCF violated 29 U.S.C. § 206(d)(1), by paying her less than a male, John Davis, in a position requiring the same skill, effort, and responsibility as her position. This provision of the Equal Pay Act ("EPA") provides, in relevant part, that:

> No employer ... shall discriminate ... between employees on the basis of sex by paying wages to employees ... at a rate less than the rate at which he pays wages to employees of the opposite sex ... for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions....

29 U.S.C. § 206(d)(1). To make out a prima facie case under this provision of the EPA, the employee must show that "an employer pays different wages to employees of opposite sexes for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions." <u>Corning Glass Works v. Brennan</u>, 417 U.S. 188, 195 (1974) (citations omitted).

Once the employee makes out a prima facie case, the employer may avoid liability by proving by a preponderance of the evidence that the pay differential is justified by one of four statutory exceptions. <u>Irby v. Bittick</u>, 44 F.3d 949, 954 (11th Cir. 1995). Those statutory exceptions include: "(i) a seniority system; (ii) a merit system; (iii) a system which measures earnings by quantity or quality of production; or (iv) a differential based on any other factor other than sex." 29 U.S.C. § 206(d)(1). If the defendant meets this burden, "the plaintiff must rebut the explanation by showing with affirmative evidence that it is pretextual or offered as a post-event justification for a gender-based differential." <u>Irby</u>, 44 F.3d at 954.

Plaintiff's initial burden is "fairly strict," in that she must prove that she "performed substantially similar work for less pay." Miranda v. B & B Cash Grocery Store, Inc., 975 F.2d 1518, 1526 (11th Cir. 1992). "The jobs held by the employees of opposite sexes need not be identical; rather, they need only be substantially equal." Id. at 1532 (citing Corning Glass, 417 U.S. at 203-04). A plaintiff establishes a prima facie case under the EPA by showing that the jobs themselves are substantially equal, not by comparing the skills and qualifications of the individual employees holding the positions. Id. at 1533. Therefore, at this stage, only the skills, effort, and responsibility actually required to perform the jobs are considered. Id. While job titles may be entitled to some weight, "the controlling factor…is job content—the actual duties that respective employees are called upon to perform." Id. (citations omitted). The focus remains "solely on the primary duties of each job, not duties that are incidental or insubstantial." Id.

Defendants contend that Plaintiff cannot make out a prima facie case under the EPA because the jobs held by Plaintiff and Davis were not "substantially similar." Plaintiff contends that she and Davis performed substantially similar work during the time periods that they each worked under the class title of OMCM. Davis had this class title from the time that he was hired at DCF, March 21, 2011, until the time that his position was "reclassified" to SMA Supervisor on June 24, 2011. (Dkt. 59-3 at P. 11) Plaintiff had this class title from the time that her new position became official, on July 1, 2011, to the time of her termination, August 5, 2011. (Dkt. 59-3 at P. 12; Dkt. 59-2 at P. 40)

Plaintiff relies in part, on the deposition testimony of Debra Johnson, DCF's Classification Compensation Manager ("Johnson"), to establish that Plaintiff's and Davis's positions required the same skills, effort, and responsibility. During her deposition,

Johnson explained that "class titles" are the official titles used statewide to designate employees in DCF's HR system.  (Dkt. 57-7 at P. 11-12)  Johnson further explained that class titles are broad categories generally based on the work being performed and the skills needed for the positions.  (Id. at P. 12)  In regards to the class title of OMCM, Johnson testified that "[t]here are some classes that are reflective of the work that's being performed.  The operations and management consultant position is a generic class, where you could utilize it for various functions."  (Id. at P. 13)  Plaintiff relies on Johnson's testimony that positions within the class title of OMCM would *generally* require the same set of skills, similar working conditions, and similar levels of responsibility, to show that work performed by both Plaintiff and Davis under the class title was "substantially similar" for purposes of the EPA.  (Id. at P. 13-14)

However, because job titles and classifications are not controlling as to whether to employees performed "substantially similar" work for the purposes of the EPA, the focus must be placed on the primary job duties *actually performed* by both Plaintiff and Davis during the time that they each worked as an OMCM.  See Miranda, 975 F.2d at 1533; see also 29 C.F.R. § 1620.13(e)[2] ("Application of the equal pay standard is not dependent on job classifications or titles but depends rather on actual job requirements and performance.").  Johnson testified that she was not aware of the actual duties and responsibilities performed by either Davis or Plaintiff in their OMCM positions.  (Dkt. 57-7 at P. 62, 65)  Moreover, a *general* similarity between jobs is not enough to meet the high

---

[2] Although the regulations published by the Secretary of Labor are not binding, courts have generally afforded them great weight in EPA cases.  See Pearce v. Wichita County, City of Wichita Falls, Tex., Hospital Bd., 590 F.2d 128, 133 n. 7 (5th Cir. 1979).

burden of "substantial similarity" under the EPA.  See Waters v. Turner, Wood & Smith Ins. Agency, Inc., 874 F.2d 797, 799 (11th Cir. 1989).

Plaintiff relies on her proposed job description for her position that she submitted to Davis on May 24, 2011, to demonstrate the duties and responsibilities of her position. (Dkt. 59-3 at P. 55)  Although Defendants contend that this description was not approved or final, Plaintiff has advanced evidence that the Secretary personally approved her proposed duties and title.  (Dkt. 57-5 at P. 148-49)   The record in this case shows that Davis did not have a written job description until after the reclassification of his position to SMA Supervisor on June 24, 2011.  (Dkt. 77-19)  Thus, Plaintiff contends that the duties and responsibilities culled from this job description and included in Defendants' Motion (Dkt. 76 at P. 8-9), are not the correct duties and responsibilities to compare to her own position for the purpose of the EPA claim because her claim is limited to the time that Davis had the class title of OMCM.  (Dkt. 82 at P. 6)

Plaintiff does point to some of the duties that Davis performed during his time as an OMCM, as established by Wilkin's testimony, to compare to her own, including "marketing and communication, promoting and implementing various projects such as Fostering their Future, Camps for Champs, One Church One Child (involving recruitment of African American foster parents) and the like."  (Dkt. 82 at P. 12)   Plaintiff's job description and responsibilities indicate that she would be responsible for developing and implementing community outreach programs on behalf of DCF, with a primary focus on minority relations.  (See Dkt. 59-3 at P. 55)  Plaintiff contends that the "bundle of tasks" and responsibilities in her proposed job description mirror those responsibilities of Davis of "marketing, outreach, communicating, promoting and implementing various DCF

projects," and that Davis's involvement with the One Church One Child program indicates that his position as an OMCM also focused on the implementation of minority-related programs. (Dkt. 82 at P. 13)

Even when viewing the facts in a light most favorable to Plaintiff, and acknowledging that Davis and Plaintiff both had responsibilities of developing and implementing community outreach programs on behalf of DCF in their OMCM positions, Plaintiff still cannot make a prima facie case under the EPA. The record in this case indicates that even though Davis did not initially supervise other employees when he began working for DCF under the class title of OMCM, his responsibilities were not only to develop and implement specific community outreach programs, but also to establish DCF's new Office of External Affairs, to develop an overall strategy to broaden DCF's outreach to the community as a whole, and to change the overall perception and image of DCF. (Dkt. 75-1 at P. 27-28, 31; Dkt. 57-6 at P. 28; Dkt. 59-1 at P. 18-19; Dkt. 77-10 at P. 4) Although Plaintiff seemingly disputes the reason behind the Secretary's decision to hire Davis, she has not advanced any evidence disputing that Davis actually performed these duties during his time as an OMCM. (Dkt. 82 at P. 4-5)

Similarly, Plaintiff has advanced no facts indicating that she was ever responsible for creating a new division of DCF, that she was ever charged with developing such broad strategies, or that she was ever responsible for addressing overall marketing and image concerns of DCF during her time as an OMCM. These are additional, substantial responsibilities performed by Davis which indicate that the two positions were not "substantially similar" for purposes of the EPA. See Waters, 874 F.2d at 799-800 (affirming summary judgment in favor of employer where comparator's job included

additional substantial responsibilities and therefore was not "substantially similar" to that of plaintiff); Hudson v. Mr. Burch Formal Wear, Inc., 193 F. App'x 859, 863 (11th Cir. 2006)[3] (affirming summary judgment in favor of employer where plaintiff performed some, but not all, of the duties performed by her comparator).

Even if Plaintiff could establish a prima facie case under the EPA by showing "substantial similarity" of jobs, Plaintiff would still be required to show that Defendants' proffered explanation for the pay differential between the two employees is pretextual. See Irby, F.3d at 954. Defendants contend that the pay differential between Davis and Plaintiff was justified based on a factor other than sex—the differing nature of the two jobs. The catchall exception under the statute of "any factor other than sex" can apply when "the disparity results from unique characteristics of the same job, from an individual's experience, training, or ability, or from special exigent circumstances connected with the business." Mulhall v. Advance Security, Inc., 19 F.3d 586, 596 (11th Cir. 1994); see also Beall v. Curtis, 603 F. Supp. 1563, 1578 (M.D. Ga. 1985), aff'd, 778 F.2d 791 (11th Cir. 1985) ("[A] wage differential can be justified for employees who are available to perform an important differentiating task even though they do not spend large amounts of time at the task.").

To rebut an employer's proffered explanation, "the employee must produce evidence which directly establishes discrimination or which permits the jury to reasonably disbelieve the employer's proffered reason." Steger v. General Electric Co., 318 F.3d 1066, 1079 (11th Cir. 2003). In her Response, Plaintiff does not address pretext, nor has she advanced evidence tending to show that Defendants' proffered explanation for the

---

[3] Although an unpublished opinion is not binding on this court, it is persuasive authority. See 11th Cir. R. 36-2." United States v. Futrell, 209 F.3d 1286, 1289 (11th Cir. 2000).

pay differential, Davis's broader range of responsibilities in relation to community outreach and in creating and developing the Office of External Affairs, is simply pretext or a post-event justification for the pay differential. Because the issue of pretext is dispositive of Plaintiff's EPA claim, failure to produce any evidence creating a genuine issue of material fact on the issue also requires an entry of summary judgment in favor of Defendants. See Butler v. Albany International, 273 F. Supp. 2d 1278, 1291 (M.D. Ala. 2003), aff'd, 107 F. App'x 184 (11th Cir. 2004).

Accordingly, because Plaintiff cannot establish that her OMCM position was "substantially similar" to that of Davis, and because she has failed to produce any evidence of pretext, Defendants' Motion for Summary Judgment is **GRANTED**, as to Count I of the Second Amended Complaint.

### B. <u>COUNT II: EPA Retaliation (29 U.S.C. § 215(a)(3))</u>

In Count II of Plaintiff's Second Amended Complaint, Plaintiff claims that Defendants violated 29 U.S.C. § 215(a)(3) by demoting her and by ultimately discharging her because of her protected activity of complaining about pay discrimination under the EPA.

Section 215(a)(3) provides in pertinent part that it is unlawful for any person:

[T]o discharge or in any other manner discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to this chapter, or has testified or is about to testify in any such proceeding, or has served or is about to serve on an industry committee.

29 U.S.C. § 215(a)(3).

To establish a prima facie case of retaliation under 29 U.S.C. 215(a)(3), a plaintiff must demonstrate that: "(1) she engaged in activity protected under [the] act; (2) she

subsequently suffered adverse action by the employer; and (3) a causal connection existed between the employee's activity and the adverse action." Wolf v. Coca-Cola Co., 200 F.3d 1337, 1342-43 (11th Cir. 2000). If the plaintiff establishes a prima facie case, the burden shifts to the employer to assert "a legitimate reason for the adverse action," which the plaintiff may then show is simply pretext. Id. at 1343.

Defendants first argue that Plaintiff did not engage in "protected activity" under the EPA because she never communicated to Defendants that she was requesting a raise because she was paid less than a man performing the same work. The same argument was raised by Defendant Wilkins in his separate Motion for Summary Judgment, filed in his individual capacity. (See Dkt. 49) In the Order on that motion, the Court found that a material issue of genuine fact existed as to whether Plaintiff's communication sufficiently conveyed her concern to the Secretary that she was being paid less than a man in violation of the EPA. (See Dkt. 94 at P. 8-11)

Next, Defendants contend that the action of changing Plaintiff's working title from "Director of Minority Affairs and Community Engagement" to "Manager of Minority Affairs and Community Engagement" and the change in her duties, which Plaintiff refers to as a "demotion," are not adverse actions. The Supreme Court has held that conduct constituting an "adverse action" for the purpose of a retaliation claim is much broader than conduct which constitutes "adverse action" in the context of a discrimination claim. Burlington Northern & Santa Fe Railway, Co. v. White, 548 U.S. 53, 67 (2006). For a retaliation claim, an "adverse action" is one that a reasonable employee would find materially adverse, "which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." Id. Although

Burlington was decided in the Title VII retaliation context, courts in this Circuit have applied its standard for "adverse action" to retaliation claims under 29 U.S.C. § 215(a)(3). See e.g. Henderson v. City of Grantville, Ga., No. 3:13–CV–87–TCB, 2014 WL 3956107 (N.D. Ga. 2014); Johnson v. Advertiser Co., 778 F. Supp. 2d 1270, 1278-79 (M.D. Ala. 2011); Suchite v. Kleppin, 819 F. Supp. 2d 1284, 1293 (S.D. Fla. 2011).

A comparison of the actual duties and responsibilities contained in Plaintiff's proposed job description (Dkt. 59-3 at P. 55) with the job description issued to Plaintiff by Myrtetus on July 19, 2011 (Dkt. 50-20 at P. 4), indicates that the responsibilities of the two positions are essentially the same. In fact, the duties contained in the job description issued by Myrtetus are nearly identical to duties contained in Plaintiff's proposed job description, save for the addition of a few words. For example, "help" was added before "identify and promulgate best practices throughout the State;" "assist in" was added before "communicating DCF's Vision...;" and "at the request of the OEA Director" was added before "represent DCF on assigned committees...." (Dkt. 50-20 at P. 4) Such a minimal "change" in job duties would not be materially adverse to a reasonable employee. See Hyde v. K.B. Home, Inc., 355 F. App'x 266, 270 (11th Cir. 2009) (noting that *de minimus* alteration of responsibilities would not amount to material adversity).

Additionally, Plaintiff claims that the change in her title from "Director" to "Manager" was a materially adverse action because it resulted in a loss of prestige. Plaintiff contends that the change was humiliating to her, especially because she had already begun emailing other DCF employees using the "Director" title. (Dkt. 59-3 at P. 15) However, the standard of material adversity is an objective one. Burlington, 548 U.S. at 68. The question, therefore, is whether a change in title from "Director" to "Manager" would

dissuade a reasonable employee in Plaintiff's position from making a complaint about pay discrimination. In the context of employment at DCF, if being a "Director" objectively carried more prestige than being a "Manager," then a jury could find that a reasonable employee in Plaintiff's position would be dissuaded from making a complaint of discrimination. See Cowan v. Jackson Hosp. & Clinic, Inc., 572 F. Supp. 2d 1286, 1291 (M.D. Ala. 2008) (noting that employer changed both the appearance and substance of an employee's job when changing her title from "supervisor" to "clerk" and that this was an action that could reasonably dissuade an employee from reporting an employer's discriminatory action). The record in this case indicates that "Manager" is a lower position than "Director" in DCF. (Dkt. 59-1 at P. 43-44) Many of the individuals at the highest level of DCF leadership carried the title of "Director." (Dkt. 50-8) In fact, Myrtetus's statement that a Director could not report to a Director and that such a situation would result in confusion as to the "managerial dynamic," indicates that "Director" was a higher and more prestigious position than "Manager" within DCF. (Dkt. 50-20 at P. 3; Dkt. 59-1 at P. 43-44) Therefore, a jury could find that the change in Plaintiff's title constituted a materially adverse action for the purpose of the retaliation claim. Moreover, there is no dispute that Plaintiff's ultimate termination constitutes an adverse employment action.

Defendants further contend that Plaintiff cannot prove the causation element of her EPA retaliation claim. "In demonstrating causation, the plaintiff must prove that the adverse action would not have been taken 'but for' the assertion of FLSA rights."[4] Wolf, 200 F.3d at 1343. This burden can be satisfied by the showing of "close temporal proximity" between the protected activity and the adverse action. Thomas v. Cooper

_____

[4] The EPA is simply an extension of the Fair Labor Standards Act ("FLSA"). Wascura v. Carver, 169 F.3d 683, 686 (11th Cir. 1999).

Lighting, Inc., 506 F.3d 1361, 1364 (11th Cir 2007). But mere temporal proximity, without more, must be "very close." Id. (citing Clark County School Dist. v. Breeden, 532 U.S. 268, 273 (2001)). In this case, Plaintiff made her complaint regarding pay to the Secretary on July 6, 2011. (Dkt. 77-18 at P. 1) Plaintiff's working title was changed on July 19, 2011 (Dkt. 50-20 at P. 3-4), and she was subsequently terminated on August 5, 2011. (Dkt. 59-2 at P. 40) Thus, the adverse actions both occurred within one month of Plaintiff's protected activity, a timeframe that meets the requirement for temporal proximity. See e.g. Farley v. Nationwide Mutual Ins. Co., 197 F.3d 1322, 1337 (11th Cir. 1999) (seven weeks is close enough to show a causal connection between protected conduct and adverse action).

Still, in order to rely on temporal proximity to establish a causal connection, Plaintiff must show that her protected activity was actually known to the individual responsible for making the decision to take the adverse action against her at the time that the decision was made. See Raney v. Vinson Guard Service, Inc., 120 F.3d 1192, 1197 (11th Cir. 1997). As noted above, Plaintiff has submitted evidence from which a reasonable jury could find that the Secretary was aware of her pay discrimination claim. Conversely, the record contains no evidence that either Myrtetus or Davis were aware of her protected activity under the EPA. As to the change in title, the record contains evidence upon which a reasonable jury could find that the Secretary was a decision-maker. Specifically, the email sent to Plaintiff by Myrtetus giving Plaintiff her title and job description indicates that Myrtetus "spoke with Secretary Wilkins as well and he indicated the position should be Manager of Minority Relations and Community Engagement." (Dkt. 50-20 at P. 3) Thus,

Plaintiff has advanced evidence, which if believed by a jury, could establish a causal connection between her protected activity and her change in title.

As to Plaintiff's termination, Defendants contend that Myrtetus was the decision-maker in regard to that action. (Dkt. 76 at P. 22) Plaintiff contends that the Secretary was the decision-maker based on her termination letter which expressly stated that she was "subject to dismissal at the discretion of the agency head" (Dkt. 50-3), and Wilkin's testimony that Myrtetus notified him of her decision to terminate Plaintiff and that he "obviously could have overrode her answer but [he] did not." (Dkt. 75-1 at P. 113) This evidence advanced by Plaintiff, if believed by a jury, could establish that the Secretary was involved with the decision to terminate her. Although Defendants have advanced evidence that may tend to refute the Secretary's involvement in the decision, its own documents communicating the termination call that evidence into question. That is to say, a material factual dispute exists as to whether Plaintiff's termination was causally connected to her protected activity. As such, a factual determination must be made by a jury, and not by the Court.

Although Plaintiff has advanced evidence establishing a prima facie case of retaliation, Defendants may offer a legitimate, non-retaliatory reason for the adverse actions, which Plaintiff is then required to show is pretextual. Defendants fail to raise this argument as to the change in Plaintiff's title. As to Plaintiff's termination, Defendants argue that Plaintiff's refusal to accept the duties and title of the "Manager" position was a legitimate, non-retaliatory justification for the action. (Dkt. 76 at P. 23) Plaintiff responds that "[t]o fire an employee because she objected to a…retaliatory employment decision is not a legitimate, non-retaliatory reason for the action." (Dkt. 82 at P. 18)

The Court agrees that in the context of this case, if a jury reasonably believes that Plaintiff's change in title was in retaliation for her protected activity, it would follow that the jury could reasonably find that Defendants' proffered "non-retaliatory" reason for Plaintiff's termination—the same retaliatory action that Plaintiff was resisting by refusing to accept lesser pay—is untenable.  See Combs v. Plantation Patterns, 106 F.3d 1519, 1538 (11th Cir. 1997) (in evaluating the issue of pretext on a motion for summary judgment, the court must "evaluate whether the plaintiff has demonstrated such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could find them unworthy of credence").

Because Plaintiff has advanced evidence that, if believed by a jury, would establish a prima facie case of retaliation under 29 U.S.C. § 215(c)(3) in regards to her change in title and her termination and that would establish that Defendants' proffered reason for her termination is pretextual, Defendant's Motion for Summary Judgment is **DENIED**, as to Count II.

### C. <u>COUNT IV: Violation of Art. I, § 2, Fla. Const. (Florida Equal Protection Clause)</u>

In Count IV of Plaintiff's Second Amended Complaint, Plaintiff claims that Defendants violated Plaintiff's right to be treated equal before the law under Article I, § 2 of the Florida Constitution by "appointing Plaintiff to a position in which she was paid substantially less than a similarly-situated employee, demoting her, and discharging her," because of her political affiliation.  (Dkt. 31 at ¶ 33)  Defendants contend that this claim must fail because there is no private cause of action under the Florida equal protection clause.  (Dkt. 76 at P. 23)  Plaintiff correctly points out that the case law relied upon by Defendants deals with whether a private cause of action exists under a Florida statute

rather than under the Florida Constitution, and therefore is irrelevant to the issue at hand. (Dkt. 82 at P. 19)  The cases cited by Defendants are not sufficient to determine the question of whether Plaintiff is entitled to bring a private cause of action under the equal protection clause of the Florida Constitution; therefore, Defendant's Motion is **DENIED without prejudice**, as to Count IV, subject to further briefing on the issue by the Parties.

   **D.  <u>COUNT V: 42 U.S.C. § 1983—Violation of 1st and 14th Amendments of the U.S. Constitution</u>**

Count V of Plaintiff's Second Amended Complaint is a cause of action against the Secretary, in his official capacity, pursuant to 42 U.S.C. § 1983.[5]

Defendants first contend that the Eleventh Amendment prohibits Plaintiff from bringing suit against the Secretary in his official capacity.  (Dkt. 76 at P. 24)  The Eleventh Amendment is an absolute bar to a damages action brought by an individual against a State or its agencies in federal court, absent the state's consent or a  statutory waiver of immunity.  <u>Kentucky v. Graham</u>, 473 U.S. 159, 169 (1985); <u>Manders v. Lee</u>,  338 F.3d 1304, 1308 (11th Cir. 2003).  Eleventh Amendment immunity also protects state officials sued in their official capacities.  <u>Will v. Mich. Dep't of State Police</u>, 491 U.S. 58, 71 (1989) ("[A] suit against a state official in his or her official capacity is not a suit against the official but  rather is a suit against the official's office.  As such it is no different from a suit against the State  itself.").  However, the only remedy sought against the Secretary in his official capacity under this Count is for prospective equitable relief.  (Dkt. 31 at ¶ 35)  Plaintiff is entitled to bring an action under 42 U.S.C. § 1983 against a state official  in his or her

---

[5] Defendant David Wilkins was also sued in his individual capacity under this Count, but the Court has since granted summary judgment in his favor as to this claim on the basis of qualified immunity.  (Dkt. 94)

official capacity seeking prospective equitable relief.  See Ex Parte Young, 209 U.S. 123, 157  (1908); Green v. Mauser, 474 U.S. 64 (1985); Social Workers Party v. Leahy, 145 F.3d 1240  (11th Cir. 1998).

Plaintiff's Second Amended Complaint alleges that Defendants took discriminatory employment actions against her due to her political affiliation and beliefs.  Case law establishes the general rule that a public employer cannot take adverse employment actions against an employee upon the sole grounds of the employee's political beliefs. Branti v. Finkel, 445 U.S. 507, 515-16 (1980).   Such an action infringes the employee's First Amendment rights.  Id. at 515.  The First Amendment protects public employees from adverse employment actions *because of* their exercise of First Amendment rights. Board of County Commissioners, Wabaunsee County, Kan. v. Umbehr, 518 U.S. 668, 675 (1996).  To prevail on her claim, Plaintiff must show "(1) that the behavior at issue consists of constitutionally protected political affiliation or belief and (2) that he or she actually suffered adverse employment action."  McCabe v. Sharrett, 12 F.3d 1558, 1565 n. 8 (11th Cir. 1994).   Plaintiff must also demonstrate that her political affiliation was a "substantial" or "motivating" factor behind the adverse employment action.  Id. at 1565. Defendants may then rebut this claim by proving that Plaintiff would have suffered the adverse action regardless of her political affiliation.  Id.  at 1565 n. 8.

Defendants contend that for the same reasons asserted above under the EPA retaliation claim, the changes in Plaintiff's title and duties cannot constitute "adverse actions" for the purposes of her § 1983 claim.  However, in the First Amendment context, an "'[a]dverse employment action' is broadly defined and as a matter of law includes not only  discharges,  but  also  demotions,  refusals  to  hire,  refusals  to  promote,  and

reprimands." McCabe, 12 F.3d at 1563; see also Rutan v. Republican Party of Illinois, 497 U.S. 62, 75 (1990) ("there are deprivations less harsh than dismissal that nevertheless press state employees and applicants to conform their beliefs and associations to some state-selected orthodoxy.").

Additionally, Defendants contend that Plaintiff cannot prove the causation element under this claim because the decision-maker, Vivian Myrtetus, did not know of Plaintiff's political affiliation.  The Eleventh Circuit has stated that "[i]t is neither possible nor desirable to fashion a single standard for determining when an employee has met her initial burden of demonstrating that a retaliatory intent was a 'substantial' or 'motivating factor' behind a government employment decision."  Beckwith v. City of Daytona Beach Shores, Fla., 58 F.3d 1554, 1564 (11th Cir. 1995).  Plaintiff's burden "is not a heavy one," and "purely circumstantial evidence, taken in the light most favorable to the plaintiff, can create a jury question on the issue of the government's motive."  Id. at 1564-65.

Although Defendants contend that none of the decision-makers in this case had knowledge of Plaintiff's political affiliation, Plaintiff has presented evidence that on August 4, 2011, the day before her termination, she asked Davis whether the change to her job title and description was "political," to which he replied, "Yes, but it's not me."  (Dkt. 57-5 at P. 194-95)  This is direct evidence, which if believed by a jury, could establish that the change in Plaintiff's title and duties was "motivated" by her political affiliation. Furthermore, Plaintiff presented evidence of prior heated conversations that she and Davis had regarding the reasons why she was an Independent, during which he made the statement that she would have more power if she were a Republican.  (Id. at 195-96)

Additionally, the evidence in this case indicates that Davis had input regarding the decisions to change Plaintiff's title and to terminate her. (Dkt. 59-1 at P. 42, 49) Based on the evidence of Plaintiff's alleged conversations with Davis regarding her political affiliation, his statement that the actions taken against her were "political" occurring only a day before her termination, and the fact that he had input into the decision, a reasonable jury could infer that her termination was motivated by her political affiliation.

The question of an employer's motive behind certain employment actions is a question of fact, and to withstand summary judgment, Plaintiff must simply present enough evidence for a reasonable jury to conclude that her political affiliation was a "motivating" factor in the decision to take the adverse employment decisions against her. Beckwith, 58 F.3d at 1564. Accordingly a more lenient standard of causation applies in the context of First Amendment claims than in the context of the EPA retaliation claim, the evidence advanced by Plaintiff, with all inferences drawn in her favor, presents a disputed issue of material fact as to whether her political affiliation was a motivating factor in the decision to change her working title and to terminate her. While Defendants may still avoid liability by proving that the adverse employment actions would have occurred regardless of her political affiliation, this is a question of fact that must be determined by a jury. See Beckwith, 58 F.3d at 1564; see also Hatcher v. Board of Public Educ. and Orphanage for Bibb County, 809 F.2d 1546, 1558 (11th Cir. 1987) (holding that summary judgment is inappropriate in First Amendment case where the parties dispute the employer's motivation); Ferrara v. Mills, 781 F.2d 1508, 1515 (11th Cir. 1986) (noting that summary judgment is particularly disfavored in First Amendment cases).

Therefore, Defendants' Motion for Summary Judgment is **DENIED** as to Count V.

## IV. CONCLUSION

Upon consideration of the foregoing, it is hereby **ORDERED** that:

1. Defendants' Motion for Summary Judgment (Dkt. 76) is **GRANTED in part**, and **DENIED in part**:

   i. The Motion is **GRANTED** as to **Count I**, Equal Pay Act, 29 U.S.C. § 206(d)(1);

   ii. The Motion is **DENIED** as to **Count II**, Equal Pay Act Retaliation, 29 U.S.C. § 215(a)(3); and **Count V**, 42 U.S.C. § 1983; and

   iii. The Motion is **DENIED, without prejudice** as to **Count IV**, violation of Art. I, § 2, FLA. CONST

**DONE** and **ORDERED** in Tampa, Florida, this 13th day of November, 2014.

MARY S. SCRIVEN
UNITED STATES DISTRICT JUDGE

**Copies furnished to:**
Counsel of Record
Any Unrepresented Person